TAPSCOT (WATSON v.). See Case No. 17,290.

TAPSCOTT (MORGAN v.). See Case No. 9,808.

## Case No. 13,751.

### The TARANTO.

### BRUCE et al. v. SWASEY et al.

[1 Spr. 170;[1] 12 Law Rep. 5; 6 West. Law J. 418.]

District Court, D. Massachusetts. March, 1849.

SHIPPING—TITLE—ASSOCIATION—MISCONDUCT OF AGENTS.

1. Where sixty persons formed a voluntary association for mining and trading in California, and purchased a vessel and stores for a voyage to San Francisco, and took a conveyance thereof, in the name of certain persons, as their agents: *Held*, that the members of the association had a right to a decree for the title and possession of the vessel, and the stores on board of her.

[Cited in The Daisy, 29 Fed. 301.]

2. But from this decree was excepted a portion of the stores, which the association had not paid for, and which had been purchased without their authority.

3. Compensation to the agents was refused, by reason of their misconduct.

4. In a petitory, or possessory suit, material men cannot intervene to enforce a lien, which they may have upon the vessel.

5. Such a lien will not be affected by the decree, in such suit.

6. An attachment of the vessel, at common law, by a creditor of the agents, in a suit against them, was no obstacle to a decree in favor of the association, for title and possession.

The libellants [A. C. Bruce and others], sixty in number, were a joint-stock company, called "The Shawmut Mining and Trading Association," with a capital of $18,000, in sixty shares, of $300 each, for the purpose of mining and trading in California. They had appointed the respondents, Thomas H. Swasey & Co., their agents and treasurers, and had paid to them their subscriptions. The Messrs. Swasey purchased the brig Taranto with this money, and fitted her for sea, with stores for the use of the association, for eighteen months. Just as the association was about to sail, the Messrs. Swasey presented their account, which made the association indebted to them about $4,000, above the capital stock. The association, on examination of this account, became dissatisfied with the conduct of their agents, and with

---

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

the state of their accounts; the more so, on finding that they had got possession of, and destroyed, the bond given by them to the association, for the faithful performance of their duty. The Messrs. Swasey, having taken the bill of sale and custom-house documents in their own name, and in that of J. M. Merrill, the master, who was in their interest, and having the possession of the vessel, with all the stores on board, refused to give them up, or permit the vessel to go to sea, unless their account was allowed and paid by the association.

The libel alleged, that the libellants were the lawful owners of the brig Taranto, her tackle, apparel, and furniture, and of the sea-stores on board, and entitled to the possession thereof. The prayer of the libel was in these words, after the prayer for process: "And that this honorable court would be pleased to decree that the libellants have a right to the title and possession of said brig Taranto, her tackle, apparel, and furniture, and to the sea-stores now on board said brig, and that the title to the same be decreed to be vested in Nathaniel Adams, John T. Dingley, C. P. Danforth, C. G. Gill, and M. A. Thomas, lawful agents of the libellants, for the use of the libellants; and to decree that the possession of said brig, her tackle, apparel, and furniture, and of the sea-stores now on board said brig, be delivered to the libellants, or to the said Adams, Dingley, Danforth, Gill, and Thomas, for the use of the libellants; and to decree that the said Thomas H. Swasey, Edward Swasey, and John M. Merrill, do deliver to the libellants, or to the said Adams, Dingley, Danforth, Gill, and Thomas, for the use of the libellants, the bill of sale, certificate of registry, enrolment, or license, and all other documents belonging to said vessel, in their possession," ending with the prayer for general relief and for costs.

There were three sets of claimants. Thomas H. Swasey & Co., agents of the association, holders of the bill of sale, and register of the vessel, claimed a lien upon them and the vessel, for the amount of their account against the association. J. M. Merrill, master of the vessel, claimed a lien for security against liabilities which he might be under, as master, to persons who had furnished labor or materials for the vessel. Messrs. Thayer & Merrill, who had furnished provisions and ship chandlery to a large amount, claimed a lien for their account, under the statute of Massachusetts, 1848 (chapter 290), which creates a lien on vessels, in the home port, for labor, materials, provisions, or stores furnished. They had, also, before the filing of the libel, attached the vessel in a suit at common law, in the state court, against the Messrs. Swasey, for these provisions, and denied the right of this court to defeat the attachment. The trial and arguments occupied several days; and more than thirty witnesses were examined on the merits.

R. H. Dana, Jr., for libellants.

This court has jurisdiction to decree title as well as possession, and full power to pass upon litigated questions of title. The Tilton [Case No. 14,054]; Dunl. Adm. Prac. 69, 296; Betts, Adm. Prac. 16; Rules of the Circuit Court in Admiralty, xx.; 1 Kaufman, Mack. (Modern Civil Law) § 193, note. It will take jurisdiction over the sea-stores, as incidental and auxiliary to the vessel, as in cases of cargo and freight. This court has jurisdiction, by a personal admonition, to require a respondent to deliver up documents of title, and revenue papers. Hall, Adm. Prac. 199; Conkl. Adm. Prac. (1st Ed.) 892; Marr. Form. 337. The Messrs. Swasey, as ship's husbands, or as agents, have no lien, by the general maritime law. There was no contract for a lien, and their conduct has been such as to defeat any equitable claim for a lien which they may set up. John M. Merrill, as master, has no lien, by the general maritime law, and in his case, as in that of the Messrs. Swasey, there was neither a special contract for a lien, nor equities which might lead the court to decline taking the vessel from him. As to the claim of Thayer & Merrill, if they have any lien, by the statute of Massachusetts, it cannot be affected by the decree prayed for, as the decree only affects title and possession, and the lien set up is irrespective of either title or possession. The decree could produce no other effect on the lien under the statute, than would be produced by a sale and delivery of title and possession, out of court. The prayer of Messrs. Thayer & Merrill, to have their lien enforced, is inadmissible. They are not in a position to enforce a lien, having simply come into court as respondents to a petitory libel, against which their lien is no defence. Also, they do not submit themselves to the jurisdiction of the court, but insist on the preservation of their attachment at the common law, which is inconsistent with the enforcement of their lien. Moreover, their attachment is a waiver of their lien. The attachment of the vessel, at common law, by Thayer & Merrill, is no obstacle to this decree. They have not proceeded in rem, against the vessel, for which they have furnished supplies, nor against any particular fund. The common law knows no such process. They have attached the vessel, simply, as the property of the Messrs. Swasey, in the same manner that they would attach their house or furniture, and hold it by no other or better claim. As between Thayer & Merrill, as attaching creditors, and the libellants, who claim the vessel as their own, the only question is, in whom is the property in the vessel? One of the objects of this suit is to contest the validity of the attachment, which can be contested as well in a petitory suit in admiralty, as in a suit of replevin, at common law. Betts, Adm. Prac. 17. As to their attachment, Thayer & Mer-

rill have no better claim than any other creditor of the Messrs. Swasey, who should attach the vessel, for a demand arising either ex contractu, or ex delicto. The common law attachment is founded solely on property, and has no relation to the subject-matter of the suit, to the equities between the parties, or to the particular fund benefited or credited.

Edward D. Sohier, for respondents, contended that:

On the evidence, the Messrs. Swasey had a lien by special contract; and that, if the court was not satisfied of this, yet they had made advances and incurred liabilities, for the benefit of the vessel, relying upon her as security, and the court, governed by equitable considerations, would not, under such circumstances, take the vessel from them, while their claims remained unsatisfied and unsecured. That the legal title, by the bill of sale, being in them, the court would not enforce a merely equitable title. The Guardian, 3 C. Rob. Adm. 93; Abb. Shipp. 132; Ohl v. Eagle Ins. Co. [Case No. 10,473]. As to Thayer & Merrill, he contended that their lien under the state law could be enforced in this proceeding. The Robert Fulton [Id. 11,890]. Their attachment, also, was valid, because the legal title to the vessel was in the Messrs. Swasey, and this court could not defeat the attachment which depends on the legal title, in favor of a merely equitable title. Moreover, the libellants, by permitting the Messrs. Swasey to have the bill of sale and custom-house documents, in their own name, held them out to the world as owners, and could not now set up a title in themselves, against third persons, who had given credit to the Messrs. Swasey, on the faith of their apparent ownership. By the attachment, the vessel was in the custody of the law, and could not afterwards be taken by the marshal. He should have returned the fact, that the vessel was attached in the state court, and then this suit in rem could not have gone forward. The Robert Fulton [supra].

Mr. Dana, in reply.

The case of The Robert Fulton was a proceeding for the enforcement of a lien, and the respondents, having liens also, properly intervened to have their claims satisfied from the proceeds. But this is not a suit for the enforcement of a lien. Also, in that case, the appellants had proceeded in rem, under the local statute, and not by attachment. An attachment is no objection to a proceeding in rem, as in the case of seamen's wages, bottomry, or salvage.

SPRAGUE, District Judge, in delivering his opinion, said, in substance, that he was satisfied, upon the evidence, that the following was the true state of the facts: The Messrs. Swasey were the originators of this enterprise, for the purpose of being made agents, and for the commissions and other profits of doing the business. They advertised for persons to join the company, prepared a constitution, which gave them the office of agent and treasurer, and fixed the capital stock at $15,000, in fifty shares of $300 each. They gave strong assurances to inquiries, that they had made careful estimates, and that this sum was ample to buy, fit out, and provision the vessel for two years. These assurances were not fulfilled, and were made without sufficient foundation. On the faith of them, however, the requisite number of persons joined the company, a meeting was called, and the constitution adopted. As prepared by the Messrs. Swasey, this constitution gave no security to the company for the fidelity of the agents, but an amendment was made, requiring of them a bond in $20,000 for the faithful discharge of their duties. This bond was given, with proper sureties. The Swaseys then announced to the company, that it would require $3000 more to pay all expenses; and gave the strongest assurances that this would be sufficient, and leave a handsome balance for contingencies; and said that they had then obtained all their bills of any consequence, and knew what the expenses would be. On the faith of these assurances, the company enlarged their number, by creating ten new shares, which were subscribed for and chiefly paid in. The bill of sale of the vessel was permitted, by a vote of the company, to stand in the name of Messrs. Swasey, and of Captain Merrill. On this point the evidence is complete and uncontradicted,—that the bill of sale was so left, merely as matter of convenience, and in reliance upon the bond which had been given, and without any view to its being security to the agents or master. At the time of this vote, there was no idea that the company would, or could, be in debt to the Messrs. Swasey. Indeed, the Swaseys had no authority to spend anything, beyond the amount of the capital stock. Between themselves and the association, they were merely disbursing agents.

About the middle of February, the Swaseys summoned the members to the city, and on the 21st, with the knowledge of the Swaseys, it was voted to sail on the 24th. The vessel was now loaded, the hatches on, the boats stowed, and everything ready for sea. On the afternoon of the 22d, the Swaseys, for the first time, announced to the company, that it was in debt to them about $4000. I have no doubt, from the evidence, that they knew the state of the accounts long before this, and delayed the announcement intentionally, until the company was placed under the disadvantage of being all assembled, most of them at a distance from their homes, and in the expectation of going immediately to sea. The company was dissatisfied, the more so on inquiry into the purchases made by the Swaseys and, on looking for the bond, it was ascertained that Mr. T. H. Swasey had obtained it, in some manner unknown to the company, and

destroyed it. This act, his counsel very properly has not attempted to defend.

On inquiry, it appeared that the Swaseys had charged the company with the face of the bills of goods purchased by them, of Thayer & Merrill, when in fact there had been, (as to a part of the bill,) a discount of three per cent.; and $100 was discounted from the price of the vessel, which was not communicated to the company.

I am satisfied that there was no contract between the Swaseys and the association, by which they have any lien upon the ship or her stores. As to a right in general equity, which an agent has to retain property against his principal, on which he has made advances, it is enough to say, that the conduct of the Swaseys has not been such as to entitle them to enforce any such equities, in this court, against the association. As against these respondents, therefore, the decree must be for the libellants.

As to the claim of Captain Merrill, he has no lien by contract, nor by the general maritime law, and there is no evidence that he has incurred any liabilities, nor had he authority from the company to do so.

The respondents, Thayer & Merrill, claim a lien for their provisions and chandlery advanced, under the Massachusetts statute of 1848 (chapter 290). This statute creates a lien on a vessel, in the ports of the state, under certain limitations, in favor of parties who have furnished labor, materials, stores, or provisions. It provides no means of enforcing the lien by any process from the state courts, and the parties are left to pursue their remedy in admiralty. These respondents have not done so. It is not necessary to decide whether they had a lien, or whether it is waived; for they are not properly before the court, for the enforcement of a lien. They are not libellants; no notice is given to the world to show cause against their claim, and the libel to which they respond, is diverso intuitu. It would be unprecedented, in a petitory or possessory suit, to enforce a lien of a party who comes in merely as a respondent. If the libel itself were for the enforcement of a lien, the situation of these respondents might be different, as in the case of The Robert Fulton [Case No. 11,890]. Neither is their lien, if any they have, an objection to the granting of the decree prayed for. The lien created by the state statute, is independent of the title or possession now in controversy, and cannot be affected by the decree.

But Messrs. Thayer & Merrill have attached the vessel, at common law, in a suit against the Messrs. Swasey, and claim to have that attachment preserved. They have not proceeded in rem, and their attachment is valid only in case the property attached is the property of Messrs. Swasey. It is partly to determine this very question, whether the vessel is the property of the Messrs. Swasey, or of the libellants, that this suit is brought. We are liable to be misled, in the first view of this point, by an impression that their attachment is in the nature of a proceeding against certain specific property, on which they have a claim arising out of the nature and circumstances of their debt. But their attachment is no better, at the common law, than the attachment of any other creditor of the Messrs. Swasey, for a different cause of action, or than if laid upon any other property of the Messrs. Swasey.

Being satisfied that the ship and stores were not the property of the Messrs. Swasey, when the attachment was made, and that Thayer & Merrill knew, when the debt was contracted, that the property libelled was bought with the money of the company, and held by the Messrs. Swasey merely as agents, their attachment is no obstacle to the decree prayed for.

A portion of the stores have not been paid for. These, of course, the libellants cannot retain, without being bound for their value, though originally purchased without authority. The decree, as to the stores, must therefore be for those which have been paid for. In this view, my attention has been called by counsel to the commissions charged by the Messrs. Swasey. They were to have commissions for services rendered, but I do not think that they have rendered valuable services to the company, and their conduct has been such that they are not entitled to compensation. I shall therefore treat the libellants as entitled to the whole amount which they have paid to the Swaseys, except actual expenses.

After this opinion was pronounced, the libellants made an arrangement with Messrs. Thayer & Merrill, to return so much of the goods, as exceeded in value the amount which the libellants had paid to the Messrs. Swasey; and it was decreed that the libellants had a right to the possession of the ship, and of the stores on board of her, and that the title thereto should be vested in certain persons who had been named by the libellants, as their agents for that purpose, and that possession of the ship and stores should be delivered to the libellants, or to said persons, as their agents, and that the libellants recover costs.

["And now after, &c. . . . the court doth order, adjudge, and decree that the libellants have a right to the title and possession of the brig Taranto, her tackle, apparel, and furniture, and of the sea-stores now on board said brig; also doth decree that the title to said brig, her tackle, apparel, and furniture, and to the sea stores now on board said brig, be vested in Nathaniel Adams, John T. Dingley, C. P. Danforth, C. G. Gill, and Marcus A. Thomas, for the use of the libellants; also doth order, adjudge, and decree that the possession of said brig, her tackle, apparel, and furniture, and of the sea stores now on board said brig be delivered to the libellants, or to the said Nathaniel Adams, John T. Dingley, C. P. Danforth, C. G. Gill, and Marcus A. Thomas, for the use of the libellants; also

doth order, adjudge, and decree that the said Thomas H. Swasey, Edward Swasey and John M. Merrill, deliver the bill of sale of said brig Taranto, and the certificates of registry, enrolment, and license, and all other documents in their possession, belonging to said brig, and required by the laws of the United States, to the libellants, or to the said Nathaniel Adams, John T. Dingley, C. P. Danforth, C. G. Gill, and M. A. Thomas, for the use of the libellants; also doth order, adjudge, and decree that the said Thomas H. Swasey, Edward Swasey, and John M. Merrill pay to the libellants costs taxed at —— dollars.] [2]